**FINN BONDHOLDERS, INC., et al., v. GERTRUDE DUKES, et vir, et al.**

26 So. (2nd) 802                                        June Term, 1946
June 25, 1946                                           Division B
Rehearing denied July 22, 1946

Carey & Harrison, for appellants.

Erle B. Askew, W. K. Zewadski and J. Lewis Hall, for appellees.

THOMAS, J.:

Storm center of this litigation seems to be George J. Deeb, stockholder, director, and president of Finn Bondholders, Inc., (of which individual appellees are minority stockholders) who, appellees assert, does busines under the firm name of Deeb Welbilt Homes, who dominates and controls Deeb Construction Company, a corporation, and who is interested in Peninsular Building Supply Company, either a "business . . . owned by [him] . . . or . . . a partnership composed of [him] and one of his brothers." His stewardship of Finn Bondholders, Inc., was challenged in the bills of complaint containing prayers for accounting of money paid by Finn Bondsholders, Inc., to him and to the corporation and partnership in which he is interested, for the appointment of a receiver and the ultimate dissolution of Finn Bondholders, Inc. As a basis for the relief, it was charged that he had secured a majority of the stock of the corporation in question, accomplished the election of himself as president and himself and friends as directors, than by virtue of his dealings with the other businesses had fraudulently enriched himself to the detriment of Finn Bondholders, Inc., and had manipulated and mismanaged its affairs—no end.

After voluminous testimony had been taken, the chancellor entered a final decree reviewing at considerable length a

history of Deeb's introduction into the corporation and of the transactions he had caused to be conducted between it and himself, trading as Welbilt Homes, Deeb Construction Company, which he controlled, and Peninsular Building Supply Company, which he, or he and his brother, owned. The court concluded that the prayer for receivership and for liquidation and dissolution of the corporation should be denied. Incorporated in the order, however, were directions that Deeb repay five distinct sums of money held by the court to have been improperly disbursed.

The bases for the principal questions we apprehend should be determined in this appeal are two provisions in the final decree which appear somewhat unique. One of them enjoined for two years the making of any contract or the assumption of any liability or the disbursement of any funds exceeding $100 "without first giving written notice to the minority stockholders . . . at least ten days" beforehand, with the exception of certain payments which it does not seem necessary now to detail; the second was an injunction against Finn Bondholders, Inc., and Deeb, as president and director of the corporation, prohibiting any transactions with the other businesses in which Deeb is interested "without the approval of the minority stockholders."

The restrictions were doubtless imposed by the chancellor because, though no such mismanagement had been established, or rather the state of affairs from mismanagement had not reached such a point as would justify the drastic remedy of dissolution and liquidation sought by the plaintiffs, he wished to prevent a repetition of the dealings he had disapproved. He cited in support of his conclusion the cases of News-Journal Corporation v. Gore, 147 Fla. 217, 2 So. (2nd) 741, and Tampa Water Works Company v. Wood, 97 Fla. 493, 121 So. 789. And here we come to a sharp issue between the parties, appellees asserting in their cross assignment of errors that the court was very wrong when it did not order the corporation dissolved. They concede in their brief that the first of these decisions, together with the one in Bills Development Corporation v. Shipp & Head, Inc., 126 Fla. 490, 171 So. 533, "narrowly defined the condition under which the charter of

a corporation may be arrested and the corporation dissolved," but they seem to regard the opinion in Tampa Water Works Company v. Wood as such a modification of the rule announced in the others as to warrant the relief they are seeking.

We think the chancellor was correct in his conclusion that the affairs of the corporation had not been so mishandled as to call for liquidation. In Mills Development Corporation v. Shipp & Head, Inc., we held that liquidation and distribution of corporate assets was not to be decreed "unless corporation [had] practically discontinued all of its business, or [was] no longer capable of being made to carry out the corporate functions," although in case of mismanagement a court of equity had "inherent power to . . . redress . . . such wrong." The holding in News-Journal Corporation v. Gore was the same. We do not find, as appellees intimate, that the opinion in Tampa Water Works Company v. Wood contains any variance of the rule. The part of the opinion quoted by appellees deals with the exception, stated in Pomeroy's Equity Jurisprudence, to the rule that courts of equity cannot or will not dissolve corporations. It was written there that dissolution may be adjudicated if the corporation had " 'failed of its purpose because of fraudulent mismanagement and misappropriation,' " which is but another way of saying that this harsh remedy will be granted where the "purposes for which the company as formed are impossible of attainment" or the corporation may no longer be made to effectuate the corporate functions.

The chancellor declared certain payments from Finn Bondholders, Inc., to Deeb and his concerns improper, but he did not regard the transactions as so flagrant and far-reaching that they defeated the corporate purpose or frustrated the corporate function. We expressly recognized in News-Journal Corporation v. Gore and Mills Devepoment Corporation v. Shipp & Head, Inc., the right of stockholders to redress for mismanagement and to restoration of moneys improperly spent. In the instant case the chancellor designated the expenditures he found improper and ordered the amounts of them returned to the corporate treasury. It does not follow that because they were wrong they were prompted by fraud

and, in fact, the chancellor, who heard all the testimony, expressly recited that no fraud had been proved. So the situation is much the same as those reflected in the cases to which we have referred. Stockholders complained about the use of the corporate funds; the chancellor sustained their position and ordered certain moneys repaid to the corporation. Misconduct of the affairs in this regard was not of the degree which would require liquidation or dissolution.

We turn now from the complaint of the appellees to the one of the appellants concerning the restrictions on future transactions. We think that Finn Bondholders, Inc., and George J. Deeb should not have been restrained for two years from making contracts, incurring obligations, or disbursing funds in excess of $100 without notice to minority stockholders, and should not have been restrained from having any dealings with George J. Deeb individually, Deeb Welbilt Homes, Deeb Construction Company, Peninsular Building and Supply Company, or "any other firm, corporation or association in which George J. Deeb had any right, title, interest or ownership . . . *without the approval of the minority stockholders*." (Italics supplied.) Such a curb on the appellants is not necessary to full protection of the rights of appellees, and the authority of the corporation and its directors and president should not be bridled by placing an implied veto power in the hands of minority stockholders. For two years the corporation could not, under such a decree, engage in any business transaction involving more than $100 without serving written notice on all the minority stockholders, whoever they might be and wherever they might be, and awaiting the expiration of that period, and presumably until any protests they might make were considered and settled, before the directors could consummate those transactions. We doubt the advisability of such a restriction and the authority for it.

We have already pointed out that these minority stockholders may enter a court of equity at any time they choose to present complaints about mismanagement of the affairs of the corporation, just as they have done in this case, but we cannot extend that right to include an assurance to each minority stockholder, wherever he may be found, ten days'

notice of a transaction involving $101 or more, thereby unquestionably inflicting on the corporation a handicap which it should not suffer. This procedure might well be only an invitation to inconsequential quibbling or to argument about business policies, and the advantage to the minority stockholders from such a course would not at all be commensurate with the disadvantage to the corporation. To repeat, if they have substantial reason to question the manner of operation of the corporation, the court will always be ready to hear them.

The obligations and powers of the directors of a corporation have been clearly defined in the decisions. In statutory law (Section 612.29, Florida Statutes, 1941, and F.S.A.) we find that the "business of every corporation shall be managed by a board of . . . directors . . . and, subject only to such limitations as may be provided by this chapter or the certificate of incorporation . . . , such board of directors shall have full control over the affairs of the corporation and may authorize the exercise of all its corporate powers."

We have not dwelt on the fact that this part of the decree applies only to the corporation and to Deeb individually without any reference to the other directors who may serve from time to time during the two-year period for which the injunction was intended to operate, preferring to decide the general question whether the court should attempt to check the actions of directors in the manner outlined in the decree. This provision about which appellants complain is not in harmony either with the statutory law or the decisions on the subject, and we conclude that the final decree in this respect should be amended.

The second feature of the injunction is akin to the first. It provides that there shall be no transactions between the corporation and Deeb on the one hand and Deeb in any capacity on the other hand "without the approval of the minority stockholders. We think that what we have already written applies to any question which may arise from the part of the order we have just quoted. This later restriction appears even more objectionable than the first one. We shall not explore the matter of the propriety of dealings between the corporation and the businesses in which the president of the cor-

poration is interested, inasmuch as it appears from this provision that the chancellor intended that such transactions would only be disapproved if not acceptable to the minority stockholders; in other words, we do not construe his language to mean that he detected any inherent wrong in such dealings, but only intended that they be disclosed to the minority stockholders and actually accepted by them. In this provision, as distinguished from the first one, no notice was required to be given minority stockholders, so an entirely different procedure is immediately conceived. Under the first injunctive provision the notice would be given, then the directors could proceed at the expiration of the ten-day period. Not so under the second. The directors would be stripped of power to act until their transactions with Deb had received the positive assent of the minority stockholders. By simply remaining silent the stockholders could veto any dealings with him. We find that this clashes with the statute empowering the directors to control the affairs of the corporation. In this case the dissonant minority would, so far as the transactions with Deeb were concerned, exercise more power than the directors. They could thwart any dealings with him, whether they were motivated by whim, caprice, or sound judgment. This restriction, too, was erroneous.

We consider it unnecessary to determine the other points presented in this appeal, and therefore we conclude our observations with the instruction that the final decree be revised to conform to the views we have expressed.

Affirmed in part; reversed in part.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.