63 So.2d 625 (1953)
HANES
v.
WATKINS et al.
Supreme Court of Florida, Division B.
March 13, 1953.
Rehearing Denied March 31, 1953.
Claude L. Gray and Dorothea Watson, Orlando, for appellant.
H.M. Voorhis and Raymer F. Maguire, Jr. (of Maguire, Voorhis & Wells), Orlando, for appellees.
DREW, Justice.
June 1, 1944, L.G. Watkins, one of the defendants below (appellee here), and D.H. Hanes, plaintiff below (appellant here), entered into the following contract:
"This Agreement, made this 1st day of June, A.D. 1944, between L.G. Watkins of Palm Beach County, Florida, party of the first part, and D.H. Hanes of Orange County, Florida, party of the second part:
"Witnesseth that in consideration of the sum of One (1) Dollar and other good and valuable considerations in hand paid by each of the parties hereto to the other and the mutual benefits to be derived by each of the parties hereto, it is mutually agreed as follows:
"1. That the party of the first part has or is about to purchase all the outstanding shares of stock in Abernathy Paint Co., a Florida corporation now doing business in Orlando, Florida, consisting of 50 shares of par value each, paying therefore a portion in cash and securing the balance of the purchase price by a pledge of said stock.
"2. The party of the first part agrees that the party of the second part shall in case the aforementioned transaction is consummated be employed by said corporation as manager, or in some other capacity at a salary to be mutually agreed upon in which event the party of the second part agrees that while so employed he will devote his undivided attention to said business and use his best efforts to carry on said business in a profitable and business-like manner under the supervision of the party of the first part.
"3. That the party of the first part agrees that if the party of the 2nd part conducts said business as in the foregoing paragraph provided and the net earnings of said corporation shall provide sufficient money to pay off any indebtedness of the corporation now outstanding and all money paid by the party of the first part for the purchase of said stock including the deferred payments, or any money subsequently advanced by the party of the first part to the corporation then and in those *626 events the party of the first party agrees that he will transfer and assign to the party of the second part forty-nine (49) per cent of the stock of said corporation and that thereafter the net profits of the corporation shall be divided equally between the parties hereto notwithstanding the percentage of stock owned by each.
"4. In case said business is successful as anticipated in the preceding paragraph and the party of the second part becomes the owner of forty-nine per cent of the stock of said corporation, then it is mutually agreed that,
"a. Neither of the parties hereto will sell, transfer or incumber any of the respective shares of stock in said corporation without the written consent of the other person without first giving to the other written notice at least ninety (90) days prior thereto. In case any such notice is given, the party so notified shall have the first right and option to purchase the shares of stock of the other at such price as shall be mutually agreed upon. In case, however, the parties hereto cannot agree upon a price for said shares of stock within ninety (90) days, then and in that event, it is agreed that each will designate in writing some person to act as an arbitrator and the two arbitrators so designated shall designate a third arbitrator, the three arbitrators then to make examination of the affairs of said business as they shall determine and arrive at a fair value for said shares of stock. Each of the parties hereto agree to lend such assistance and aid to said arbitrators as may be required and to cooperate with them in every way. The decision of a majority of said arbitrators in writing shall be final and binding upon the parties hereto, and the party electing to purchase said shares of stock shall have thirty (30) days thereafter in which to take up and pay for said stock for the price so fixed and shall at that time receive a proper and legal assignment thereof.
"b. In case either of the parties hereto shall die, it is agreed that the survivor shall have the first right and option at any time within ninety (90) days after notice of such death to purchase all of the stock of the deceased party at such price as the said survivor and the legal heirs or legal representatives of such deceased party shall mutually agree upon. In the event that they are unable to agree upon a price for said shares of stock, then the matter of price shall be submitted to arbitrators in the same manner and form as hereinabove provided in paragraph three hereof and the amount or price so fixed shall be binding upon the parties and the party electing to purchase shall have thirty days thereafter in which to take up and pay for said stock at the price so fixed by the arbitrators and shall at that time receive a proper and legal assignment thereof.
"c. This agreement shall be binding upon the parties hereto, their respective heirs, legal representatives and assigns."
June 10, 1944, the stockholders of Abernathy Paint Co., Inc., held a stockholders' meeting. The official minutes show the following stockholders present: L.G. Watkins, owner of 48 shares; D.H. Hanes, owner of 1 share and William N. Ellis, owner of 1 share. At this meeting Watkins, Hanes and Ellis were elected directors. On the same day the directors met and elected Hanes President, Watkins Vice-President and Treasurer, and Ellis Secretary.
January 2, 1945, the same stockholders re-elected the same Board of Directors, and on the same date the Directors met, re-elected the same officers and fixed the salaries of Hanes at $5,100 and Watkins at $1,500 and authorized such officers to incur expenses for the benefit of the company.
The official minutes show the stockholders and directors met on August 17, 1946, and on September 13, 1947, at which meetings routine business was transacted. All of these meetings, except the meeting of September 13, 1947, were participated in by *627 Hanes and the record of the minutes of all of them, including the meeting of September 13, 1947, were signed by Hanes.
During the years from the date of the purchase of said business until the complaint was filed herein, the business flourished. The name was changed to "Hanes Paint Store" (apparently at Watkins' suggestion). The original cost of the stock was soon retired out of earnings, salaries were increased, dividends paid, a new store location was purchased and the business accumulated a large surplus.
May 25, 1951, Hanes filed his complaint against L.G. Watkins and D.H. Hanes, individually, and L.G. Watkins and D.H. Hanes, a co-partnership trading and doing business under the firm name and style of Hanes Paint Store, and Abernathy Paint Company, Inc., a corporation organized and existing under the laws of the State of Florida. In the complaint Hanes prayed for a declaration of his rights under the original contract hereinabove set forth and alleged amendments thereto, as well as his rights in certain real estate purchased in the name of the corporation, and further that the court "dissolve the partnership relation now existing between him and the said L.G. Watkins and dissolve the corporation of Abernathy Paint Co., Inc., and wind up and settle its affairs and distribute its assets among those lawfully entitled to receive the same." Hanes also prayed for injunctive relief against interference with the business by Watkins, or, in the alternative, the appointment of a receiver and for a partition of the real estate above mentioned. A lis pendens was filed at the same time the complaint was filed.
The defendants denied that there ever was a partnership, set forth that Watkins owned 51% of the stock (a controlling interest); that while there was some dissension among the stockholders, the corporation was actively engaged in business, capable of carrying out its corporate functions, could solve its own internal affairs and that the courts were not authorized under such circumstances to dissolve it.
After the issues were made up, extensive testimony was taken. The hearings extended over a long period of time and the evidence consisted of over 440 pages and about fifty exhibits. Boiled down to its essence, two questions were involved in the lower court and two questions are involved in this appeal. The first is whether the relationship between Watkins and Hanes was that of a partnership, joint venture or as stockholders in a corporation; the second is, if the relationship is that of stockholders, should the court, under the evidence, dissolve the corporation and distribute its assets.
The first question is purely a factual one. The lower Court  under our system of jurisprudence the trier of the facts  found:
"I find that the venture involved in this case originated in the desire of Watkins and Hanes to acquire the business of Abernathy Paint Company in Orlando; for that purpose the business was entered into and subsequently assigned to Watkins. As a part of this purchase, the arrangement between Hanes and Watkins was set out in this contract, exhibit No. 1. It has been urged by plaintiff that the intention of the parties and their relationship one with the other, was that of partnership. However, a reading of the contract between Hanes and Watkins discloses the expressed intention that the business was to be purchased as corporation and that after the payments to Watkins from the profits of the business, his investment therein thereafter would continue as a corporation, Watkins owning 51% and Hanes 49%, of its capital stock. It is therefore an imperative conclusion that by such contract, Hanes understood and intended that his ultimate position would be that of a minority stockholder in the corporation Abernathy Paint Company, Inc.
"The provisions of the contract with respect to repayment or reimbursement of Watkins' investment and the further provision for the issuance of 49% of the capital stock to Hanes was substantially complied with.

*628 "As it is not unusual in the conduct of affairs of close-held corporation, the methods of transacting the corporation's business did not in all respects comply with strict corporate procedure. Nevertheless, the corporate form was adhered to over a period of years and, indeed, the plaintiff, himself, concedes that he was, and acted as, the President of the corporation, drew a salary as such, signed corporate minutes as such, and acquiesced in and approved payment of taxes on a corporate basis. On the basis of the law cited to the Court it is my conclusion that the plaintiff Hanes cannot now assert that the business was and is a partnership rather than a corporation.
"With regard to the contention that the corporate form was abandoned some time after its purchase, the only evidence to support such contention is the shift away from the Abernathy Paint Company, and doing business as Hanes Paint Store, and the additional fact of the contributions of $5,000, each, by the parties to the purchase of the present store building. I find that the shifting of the name by which the company did business is inconsequential with regard to the issue of the corporate nature of the business and I further find that, with the knowledge and acquiescence of the plaintiff, the $5,000 contribution by each of the parties was carried in officers' accounts in the corporation books. The parties had a perfect right to select that method of doing business. And since they have so selected that manner of doing business, neither can now assert that the corporation ceased to exist or that, as between the parties, it become a partnership arrangement.
"I am of the view that the plaintiff, in view of all the evidence in this case, is estopped to deny the corporate existence. But, going further, I am also of the view that even were he not estopped, the record discloses that the intention of the parties has always been to use the corporate form of transacting their business and that the plaintiff has not made a case for disregarding the corporation and leaving the parties as partners."
Not only is there credible competent evidence to support these findings but the evidence is so overwhelming that no other possible conclusion could be reached. That we may not disturb the lower court's findings under such circumstances is elemental.
As to the second  and last question raised, the lower court said:
"With regard to the contention with regard to the proposition that this Court has jurisdiction to dissolve the corporation and wind up its affairs, it is my view that the case presented by the evidence does not meet the requirements of the rules set out in `Tampa Water Works Company vs. Wood,' cited by both counsel. There is no showing that the corporation has reached such a stage that the purposes for which it was formed are impossible of attainment, or that the corporation has practically discontinued all its business, or that there is such a deadlock between stockholders that the affairs of the corporation may not be legally transacted."
We hold the Court to be correct in his ruling on this point, not only under the authority of the cited case, Tampa Water Works Co. v. Wood, 97 Fla. 493, 121 So. 789, but also under Mills Development Corporation v. Shipp & Head, Inc., 126 Fla. 490, 171 So. 533, 534; News-Journal Corporation v. Gore, 147 Fla. 217, 2 So.2d 741; Finn Bondholders, Inc., v. Dukes, 157 Fla. 642, 26 So.2d 802.
For the reasons pointed out the decree of the lower court is hereby
Affirmed.
HOBSON, C.J., and THOMAS and ROBERTS, JJ., concur.