## Neff, Appellant, v. Twentieth Century Silk Corporation et al.

Argued May 2, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Maurice Bower Saul,* of *Saul, Ewing, Remick & Saul,* with him *Earl G. Harrison* and *Sidney Loewenstein,* for appellant.—A minority stockholder of a corporation may through the courts control the payment of compensation to officers or directors: David v. Davis, 135 App. Div. 206.

Directors, as trustees, voting salaries to themselves are in a position of dealing with themselves to their own advantage, and the presumption is that they act in their own interest, casting on them the burden of overcoming such presumption: Schaffhauser v. Arnholt & Schaefer B. Co., 218 Pa. 298.

The maxim "He who comes into equity must come with clean hands" has no place in this case: Belmont Laboratories v. Heist, 300 Pa. 542.

*Frank Rogers Donahue* of *Donahue, Irwin, Merritt & Gest,* with him *George M. Kelvin,* for appellees.—Where the directors, who are also the officers, by a resolution raised their salaries, such action cannot be declared void at the instance of a minority stockholder without any reference to the reasonableness of the salaries where under a stipulation of fact 80% of the stockholders would have approved of the directors' action had it been put to a vote: Sotter v. Boiler Works, 257 Pa. 411; McNab, 62 Hun. (N. Y.) 18; Meyer v. Engraving Co., 249 Mass. 302; Bergdoll v. Brewing Co., 10 Pa. Dist. Rep. 173.

The appellant has no standing in this court: Comstock v. Thompson, 286 Pa. 457; Evans v. Dravo, 24 Pa. 62; Swan v. Scott, 11 S. & R. 155; Hodder v. Hogg, 230 Pa. 9.

OPINION BY MR. JUSTICE LINN, June 30, 1933:

The bill charges unlawful conspiracy by the directors, who are also officers, of the Twentieth Century Silk Corporation to pay exorbitant salaries to themselves, as officers, to the detriment of plaintiff, a minority stockholder.

The challenged resolution was adopted in January, 1932. To appreciate that action, in its relation to plaintiff's case and the findings of the learned chancellor, a word of history is necessary. The record shows that the corporation was formed by four men (three of them, defendants) in 1920, three of them each owning one-fifth of the capital stock, and the fourth, named Nathanson, owning two-fifths. These four men participated in the operation of their plant, which was "throwing" or processing raw silk on commission. Until his dishonesty caused his dismissal in 1931, Nathanson was general manager. The company's plant, which is at Bethlehem in this state, is equipped with some 300 machines, employing over 200 persons. The company began with a capital of $38,000, divided into 380 shares. All its work has been done for one silk-owner, George B. Pfingst, Incorporated, and, generally speaking, its business has increased from year to year. In 1923, for example, the total commissions paid to the company by the Pfingst company amounted to $111,860.20, while in 1931, the total was $285,418.17. The net profits have varied; in 1923 they were $3,745.39, and in 1931 $2,720.20. In some years losses were sustained. The book value of its assets December 31, 1931, was $190,186.57.

There is evidence that early in 1931, before plaintiff became a stockholder, Nathanson was found to be dishonest in connection with the work of the company, and,

following that discovery, ceased to be a stockholder, one-half his holdings passing to George B. Pfingst, Incorporated, and the other half to plaintiff, Neff, who is Nathanson's brother-in-law. The evidence shows that up to the time of Nathanson's default, the four owners of the capital stock, all employed by the company, apparently looked upon each other somewhat informally as partners, interested in the company's success in the ratio of their shareholding. One of them testified "All the owners, all five [four] of the partners received $20.00 a week. Q. You were not partners? A. Well, the corporation." During that period each received a weekly check, marked "salary"; the three owning one-fifth of the stock each received $20.00, Nathanson, who held two-fifths, and did more work than any one of the others, receiving $40.00. There is evidence that they considered those payments to be on account of salary, and that, from time to time, when the books showed a profit and cash was available, additional payments of salary were made in the same proportions. In dealing with these payments, plaintiff contends that they were declarations of dividends. Defendants contend that they were salaries for services rendered to the corporation; that no dividends were ever declared and that all surplus earnings were put into plant and appear in the assets shown on the balance sheet. Informality, during that period, in the payment of salaries to the four persons who then held all the stock, is not material to the disposition of this appeal. On this subject the chancellor made the following finding of fact: "8. The company had for some years been paying the officers of the company certain salaries and from time to time had been paying additional sums to each of said officers who were the sole stockholders. These payments were made as salaries in checks marked 'Salary' and were entered on the books as salaries."

Plaintiff testified, that he was advised of this method of payment before he became holder of one-fifth of the

stock and that he was told by another stockholder that he would also receive such salary, even though he did no work. On this subject, the chancellor found: "9. Neff, the plaintiff, from July, 1931, to December 31, 1931, received $1,270 in checks marked 'Salary' and entered on the books as salary. Plaintiff knew that these payments were entered as salaries and accepted them as such although he spent no time at the mill nor did he render any service whatever to the company."

After the Pfingst company and the plaintiff became the holders of the shares formerly held by Nathanson, other changes in stock ownership took place and are shown in the record. There is evidence that in 1931 the officers were advised by counsel to abandon the method of paying salaries referred to, and to conform to corporate practice in such matters. Accordingly, in January, 1932, the five members of the board, defendants, adopted a resolution that until further action, the following salaries should be paid: "Louis Schwartz, president $75.00 per week, Jay J. Jacobs, first vice-president $37.50 per week, George B. Pfingst, second vice-president $37.50 per week, Alex Karel, secretary and assistant manager of mill $95.00 per week, Gabriel Karel, treasurer and general manager of mill $135.00 per week." These officers are all the directors; three of them, Schwartz and the two Karels, have been in the enterprise from its incorporation. The chancellor has set out the services rendered by each and from that and other evidence concluded: "16. The salaries paid to the officers of this corporation since January 16, 1932, in accordance with the resolution of the board of directors, are fair and reasonable compensation for the services rendered by said officers." See Hodder v. Hogg, 230 Pa. 9, 79 A. 156; Russell v. Patterson Co., 232 Pa. 113, 119, 81 A. 136.

Instead of increasing the amount paid annually for salaries, the chancellor finds that for 1932, at the rate paid up to the time of hearing, the salary payments

pursuant to the resolution will be $19,760, against $25,-470 paid in 1931. For 1931, 8% of the gross revenue was paid in salaries, while in 1932 it was 7%.

The parties have stipulated that while there was no stockholders' meeting to consider the salary action of the board of directors, if such meeting were held, the action would be approved by the votes of all except Neff. While such approval by the stockholders would be relevant, it would not prevent inquiry on proper showing of an injured minority stockholder: Sotter v. Coatesville Boiler Works, 257 Pa. 411, 422, 101 A. 744; see, too, Russell v. Patterson Company, 232 Pa. 113, 120, 81 A. 136; Lowman v. Harvey R. Pierce Co., 276 Pa. 382, 386, 120 A. 404; nor, in the circumstances disclosed by the findings of fact, is it material that all of the directors voted in favor of the resolution; there was no violation of the rule applied in Schaffhauser v. Arnholt, etc., Brewing Co., 218 Pa. 298, 67 A. 417.

The decree is affirmed, appellant for costs.