NEWS-JOURNAL CORPORATION, a Florida Corporation, *et al.,* v. R. H. GORE

2 So. (2nd) 741
Division B
Opinion Filed May 13, 1941
Rehearing Denied June 18, 1941

218

*Green & West,* for Appellants;

*McCune, Hiaasen & Fleming,* for Appellee.

THOMAS, J.—In 1928, Julius Davidson and his son, Herbert M. Davidson, became the owners of 600 shares of the 1,000 shares of stock then outstanding of News-Journal Corporation, which was engaged in the publication and circulation of newspapers in the City of Daytona Beach. At the time the remaining shares, 400 in number, were owned by T. E. Fitzgerald. About three years later the appellee, R. H. Gore, himself a newspaper man of wide experience, was importuned by a group of citizens to establish a newspaper, rival to the one then published by the appellant corporation, and as a consequence appellee became a competitor of the appellant.

This competition between the two papers was lively from its inception and as time progressed it grew into bitterness. We offer no comment on the practices of the competitors for fear that it would obscure the real issues involved in this litigation, and to the end that the controversy may not thus become beclouded will confine our observations as nearly as possible to the relative rights of the litigants in their eventual position as stockholders in a common corporation, namely, the appellant.

In May, 1936, the stockholder Fitzgerald resigned his directorship, a position held by him theretofore continuously from the time the Davidsons became interested in the enterprise and in July of the following year he sold all of his stock to the competitor, R. H. Gore.

Three years passed when the plaintiff, appellee here, filed his bill of complaint against the defendants seek-

ing relief from alleged mismanagement on the part of the Davidsons. The pleadings are quite extensive and it does not appear necessary to prolong this opinion by giving the substance of them in order to dispose of the questions which have been presented to the Court for solution as they will develop from the discussion of the attacks on the chancellor's findings of fact and conclusions of law.

Generally, we will deal with the conduct of the affairs of the corporation by the Davidsons, the propriety of the purchase by one of them of certain property used by the corporation and the correctness of the chancellor's ruling on the principal issues as well as the assessment of certain costs incurred in producing the testimony of a certified public accountant.

The final decree was very far reaching in its effect and it is criticised by the defendant who insists that the relief afforded was entirely too harsh under the circumstances unfolded by the witnesses and the documentary evidence, while plaintiff contends that it fell short of granting the full relief justified.

Having found that the equities were with the plaintiff, and that the assets of the defendant "should be liquidated and distributed over some reasonable length of time" the chancellor ordered that these assets be sold on or before June 1, 1941, at private sale on a basis that would afford an equal opportunity to the litigants as well as any other person to purchase them, and that upon failure to accomplish liquidation in this manner the court would entertain an application for enforcement of the final decree to effect a sale upon just and equitable terms and conditions. We will refer hereafter more in detail to the various findings in the decree forming the foundation for this vital provision

with reference to liquidation and attempt to group them as we dispose of the questions in the order given at the outset.

The chancellor held the conviction that the Davidsons had enriched themselves at the corporation's expense by drawing salaries for their labors which they did not properly earn and which were especially out of proportion to the services rendered when considered in connection with the income from the corporation. This finding of the chancellor that they received excessive compensation was, in view of all the circumstances reflected by the record, eminently correct. He concluded, however, that because their remuneration had been approved by all of the stockholders "at least until July, 1937" (the time when plaintiff secured Fitzgerald's interest) it would not be just to award a money decree in favor of the corporation and against the Davidsons for the difference between amounts actually earned and those paid.

It is the general rule "that stockholders have no standing to attack mismanagement of the corporation prior to the acquisition of their stock." 6 Thompson on Corporations (3rd ed.) Sec. 4509. Fitzgerald as a director approved the salaries established and therefore his successor in ownership could not complain about amounts paid therefor prior to the transfer, but the purchaser had the right to contest salaries fixed and paid after he became a stockholder. 13 Am. Jur., Corporations, Sec. 456, *et seq.*

The chancellor decided that inasmuch as no protest had been made by the plaintiff against salaries paid to the Davidsons after he bought his stock there should be no money decree entered for the return of the unearned portions paid since that time.

We believe that in the circumstances it would have been just for the court to enter a decree requiring the Davidsons to place into the treasury of the corporation the parts of their salaries that were excessive paid them after July, 1937, even though the plaintiff may not have protested until the filing of the suit. There were but three stockholders and strong animosity existed between the Davidsons who were in control and the third stockholder Gore and this feeling had become so strong that unquestionably any voice expressed by the latter would have fallen on deaf ears. There was no such conduct on the part of the minority stockholder as could be construed as acquiescence on his part, and as would have precluded him from successful complaint under the rule announced in Redstone v. Redstone Lumber & Supply Co., et al., 101 Fla. 226, 133 So. 882. Under the facts we think that the court may well have interfered with the salaries being paid (Neff v. Twentieth Century Silk Corporation, et al., 312 Pa. 386, 167 A. 578) and that it would have been proper for the decree to require a return of the excess compensation subsequent to July, 1937. Hall v. Woods, 325 Ill. 114, 156 NE 258; Calkins v. Wire Hardware Co., 267 Mass. 52, 165 NE 889. Patently, if there is a restoration of that part of the amounts received by the Davidsons found to have been unearned and present compensation is restricted to the figure given in the decree the effect on the value of the interest of the plaintiff who owns forty per cent of the stock will be substantial.

We consider next the demeanor of one of the majority stockholders in the purchase of certain properties occupied or used by the corporation in its business. There were two parcels. Both were bought by David-

son, the elder, joined by his wife. The first tract was a vacant lot adjoining in the rear the one on which was situated the building occupied by the corporation, and it was used without permission of the owner for the purpose of ingress and egress to the back entrance. The amount paid was $1800 and doubtless this could have been procured without difficulty even though the corporation may not have had that amount in cash on hand at the time. As soon as the property was bought the buyers fixed a rental charge for its use which has continued ever since.

The second tract was purchased by these same parties about five years after the first one and on it was located the entire equipment and offices of the corporation which had rented it from a lessor subject to a mortgage executed by the latter. The encumbrance was foreclosed and the property sold at public sale to satisfy the debt. Davidson and his wife paid $20,000 for the property, $5,000 of which was furnished by them from personal funds and $15,000 borrowed from a lender who took as security a mortgage on both parcels of land. The vendees thereupon increased the rent. There is substantial evidence that at the time of the latter transaction there was no money in the treasury of the corporation but from the evidence we are convinced that it had sufficient assets to secure a loan of $5,000 and it is apparent that the corporation could have financed the purchase. The lender testified that he would have made the same loan to the corporation, taking as security the two pieces of property, and Davidson stated on the witness stand that he made no attempt to obtain a loan from the person from whom he secured the money or anybody else. This indicates a disregard of a duty owed the

corporation by this officer and we think the chancellor was thoroughly justified in his conclusion that the property bought by Julius Davidson and his wife was held by them as trustees for the corporation.

Thus, it will be seen that the corporation was the lessee of one lot, a trespasser on the other and that both of them were extremely valuable in carrying out the business for which it was organized. With no apparent effort on the part of the officers, who held a majority of the stock, to secure the property for the corporation, title to both tracts became vested in one of them and his wife and he immediately made a charge for the use of one tract for which theretofore nothing had been paid and increased the rent on the other. These two transactions were declared fraudulent by the chancellor and we consider the ruling establishing a trust entirely equitable, particularly in view of the history of the management which had then been clearly proven by the evidence.

It is true that there is no responsibility on the part of an officer of a corporation to loan money to it or to supply personal funds to buy property for it (Zeckendorf v. Steinfeld, *et al.,* 12 Ariz. 245, 100 p. 784) and it seems to be the rule that where there is a duty on the part of officers to acquire property for the corporation and in violation of the obligation they purchase it individually they cannot retain the benefit but become trustees. 3 Fletcher Cyclopedia Corporations, Sec. 861; 19 C. J. S. Corporations, Sec. 777. It was of the utmost importance to the welfare of the corporation that these two pieces of property be retained by it in furtherance of its business and that neither of them fall into hostile hands. If the stockholder and officer who at the time was receiving from the corpo-

ration moneys for his services far exceeding the amounts he actually earned had made the same efforts on behalf of the organization that he asserted in his own interest, both lots could have been procured for the corporation and to its especial benefit.

We now reach the question of costs assessed for the testimony of an expert witness pursuant to a motion therefor made by the plaintiff. In order that the Court's ruling may be more easily understood we refer to a former decision of this Court in this case, News-Journal Corporation v. State, *ex rel.* Gore, 136 Fla. 629, 187 So. 271. It was the judgment of the Court, expressed in that opinion, that a peremptory writ issued by the circuit court permitting an examination of the records by the minority stockholder be revised by "designating some one entirely neutral between the parties to examine the records and books of respondents [News-Journal Corporation] and make report of such matters and findings as will enable relator to ascertain the value of his stock, such investigation to be made under the restrictions here stated and with due reference to the rights of relator and respondents." In obedience to that order the court appointed an accountant to examine the books and make a report which was done and the author of the report testified in this case. After his testimony was given the plaintiff applied for an order allowing a witness of his selection to examine and audit the business and financial affairs of the corporation which was granted over the defendant's objections. This witness then made his examination and subsequently testified in the case. Censure is made of the decision of the court and that the costs for procuring this testimony be assessed

against the defendant, because, it is urged, he was in fact a witness for plaintiff. Even assuming the correctness of the position that the witness was not one designated by the court we cannot say the chancellor erred in taxing the cost as he did. This was a discretionary matter and no abuse is shown. Wilhelm v. Adams, *et al.,* 102 Fla. 669, 136 So. 397.

Finally, we consider the propriety of that part of the final decree ordering sale of the corporate property and liquidation of the assets. So far we have agreed with the chancellor in the main. It is here that our opinion differs from his. Despite the action of the majority stockholders of the defendant corporation in the payment of excessive salaries and the purchase by one of them of property which should have been bought for the corporation, and bearing in mind also charges of general mismanagement, we cannot agree that their misconduct in the operation of the corporation was so grievous that the liquidation of it is justified. It is written in 16 Fletcher Cyclopedia Corporations, Sec. 8082, p. 870, that usually minority stockholders cannot "control the majority in the management of the corporation" and if "they disapprove of the manner in which the corporation is being conducted, their rights can . . be fully protected by less drastic action than a dissolution"; that they may "endeavor to procure the election of new officers, or may dispose of their stock and withdraw." It is further written in the same work, Sec. 8081, page 867: "an exception to the rule that dissolution of a corporation will not be decreed at the suit of a minority stockholder is recognized where the affairs of the corporation have reached such a stage that the purposes for which the company was formed are im-

possible of attainment." The principle was recognized by this Court in Mills Dev. Corp. v. Shipp & Head, Inc., 126 Fla. 490, 171 So. 533, where Mr. Justice DAVIS wrote that "the winding up of the corporation, or liquidation and distribution of its assets, is not warranted . . unless the corporation has practically discontinued all of its business, or is no longer capable of being made to carry out the corporate functions for which it was chartered. . ." In Tampa Water Works Co. v. Wood, 97 Fla. 493, 121 So. 789, the court adopted the general rule that where a charter has not expired and the corporation is a going concern dissolution will not be decreed at the instance of a stockholder in the absence of statutory authority therefor and the statement of the rule in Pomeroy's Equity Jurisprudence (4th Ed.), Sec. 1540, was cited with approval. This author gives as the exception to the rule the utter failure of the corporate purpose "because of fraudulent mismanagement and misappropriation of its funds by the president and manager, who owned a majority of its stock. . ."

The chancellor found that the corporation was a going concern, solvent, and that it was "capable of being made to carry out the corporate function of operating newspapers," but that it "is not able to carry out its corporate function of being operated for the pecuniary gain of its stockholders rather than the personal gain of its officers." He concluded also that mere failure to pay dividends or to make profits is not in itself sufficient to justify liquidation. It seems pertinent to observe here that for a period of approximately ten years the plaintiff published his newspaper at a loss many times greater than that of the defendant.

By way of summary we affirm the findings of the chancellor with reference to improper acquisition of the properties which we have described and the status of the purchasers as trustee; the payment of exorbitant salaries to the Davidsons and the assessment of the costs for the expert witness who was called by plaintiff after motion duly made and granted. It is our opinion however that appropriate orders should be entered not only enjoining the payment of excessive compensation in the future but also requiring the Davidsons to repay to the corporation amounts drawn by them above reasonable compensation for their services subsequent to July, 1937.

When the terms of the final decree, as revised in accordance with this opinion, are put into effect the corporation will retain its entity and the plaintiff will be given the relief to which he is entitled as a minority stockholder.

The decree is therefore affirmed with directions to delete from it the provision for liquidation and distribution of the assets and to incorporate a provision for the return of the overpayment of compensation.

BROWN, C. J., TERRELL and CHAPMAN, J. J., concur.