**Jack FARBER, personally, and as a shareholder of Servan Land Corporation, Inc. on behalf of the corporation, Plaintiff,**

v.

**SERVAN LAND COMPANY, INC., et al., Defendants.**

**No. FL 73–151–Civ–NCR.**

United States District Court,
S. D. Florida,
Ft. Lauderdale Division.

Dec. 27, 1974.

**634**

Cromwell A. Anderson and Shepherd D. Johnston of Smathers & Thompson, Miami, Fla., for plaintiff.

Mallory H. Horton of Horton, Perse & Ginsberg, Starr W. Horton, Miami, Fla., for defendants.

## FINAL JUDGMENT

### MEMORANDUM OPINION

ROETTGER, District Judge.

The court previously announced findings of fact and conclusions of law from the bench at the end of the final hearing in this diversity case. Because of the subsequent appraisal of the property the court will set forth these findings and conclusions in order to enter a final judgment which incorporates the results of the appraisal.

The parties involved in this lawsuit were stockholders in the defendant corporation which owned the Rolling Hills Country Club. Rolling Hills is an unusual venture in that it was formed partially as an ego trip and out of vanity considerations. A number of originators of this excellent golf course became exasperated at the difficulty in obtaining starting times at the Diplomat Country Club, so they decided to develop their own golf course to obviate that inconvenience.

Defendant Seriani appears to have been the driving force in this venture from its inception.[1] He certainly exercised the executive powers of the corporation throughout its existence. In many ways, this may have been by default, because other stockholders were not in South Florida to exercise such powers or they did not have the inclination or the sufficient ownership to have done so, or some combination of those factors.

The court finds that from the beginning Seriani engaged in the questionable tactic of dealing with himself or his own corporations, in the sense of utilizing services of Di-Mar Corporation for sand and gravel and other services inherent in the construction and operation of a golf course. In addition, Seriani participated in the profits from the operation of the Clubhouse Restaurant after the manager was discharged by Seriani.

The court does not find that Seriani in any way profited unduly by those relationships. The court merely observes that at any time a corporate officer participates in such activities he lays himself open to the charge that there may be a conflict of interest because he has dispensed with competitive bidding. However, the impropriety of those practices is not an issue in this case.

The testimony of Mr. Forman, a minority stockholder, is persuasive that the golf course should not have been built without acquiring all of the per-

---

1. He also was the only stockholder to guarantee the corporation's note to the bank.

imeter land, as in the modus operandi of many real estate ventures in this county. The court does note that the original acquisition of 160 acres from the O'Neal Estate was augmented by an additional 20 acres purchased from Mr. Farquhar around 1960.

The court finds that the possibility of real estate development was contemplated by the stockholders. For example, Mr. Forman testified, via deposition, that scarcely a meeting of the stockholders occurred without discussing the acquiring of additional property from Mr. Farquhar. However, the possibility of real estate development would always be in the minds of a group of affluent businessmen. This does not mean that real estate development was actually part of the corporate purpose and the court specifically finds that real estate development was not a purpose for which the corporation was formed.

Plaintiff Farber, a minority stockholder, became disenchanted early in the operation, primarily because he felt the operation was not being conducted in the soundest manner possible from a business point of view. Farber had his falling out with Seriani and also Savin and has been the vocal and only dissenting minority stockholder ever since. Farber's dissatisfaction had reached the point of bringing a court reporter to the annual meeting.

The court finds that a majority of the stock was controlled by Seriani and Savin who were of like mind in corporate matters, with one possible exception in the sale of four acres of land to B D & L Corporation for the erection of the lodge. The lodge was subsequently acquired by the corporation so that the golf course had both a clubhouse and a lodge, all of which occupied about 180 acres at the critical time in 1968 and subsequently.

At the April 1, 1968 joint meeting of the directors and stockholders, the stockholders approved a refinancing arrangement of the long-term mortgage, which would net them additional money of approximately $248,000.

At the same meeting Mr. Forman indicated that Mr. Farquhar was disposed to sell the abutting land to the club, and Mr. Forman suggested such expansion could be financed with additional common stock which could be purchased from the proceeds of the proposed payoff of notes and preferred stock redemptions.

The minutes of the meeting indicate that "the stockholders seemed to feel that this possibility should certainly be investigated and would be made financially feasible by the refinancing." But the stockholders took no further action concerning an investigation; instead they voted to pay off the stockholders' notes and redeem the outstanding preferred stock. Only Farber voted against the motion.

The court does not find that Farber's objection to that procedure has any real basis. A corporation is managed by the corporation's directors. Even if events subsequently prove Farber's position to have been sound, that does not change the fact that the actions of its directors, subject to certain exceptions which do not appear here, would govern. The minutes of the meeting do indicate that the stockholders gave a sense of approval to acquiring the abutting land from Mr. Farquhar. But no director—not even Farber—made such a motion.

The court finds that prior to March 10, 1969, Seriani had the opportunity to purchase the additional 160 acres; that he broached the subject to Savin, the largest stockholder, on the 14th green, and they agreed then and there to buy it on the terms demanded by Mr. Farquhar.

■ The court finds that it would have been preferable for Seriani and Savin at that time, in their position and under the circumstances, to have called a special meeting of the eleven stockholders and to have advised them of this

possibility of purchase. This would have given the stockholders a chance to take corporate action to acquire the land or to defer in favor of Seriani and Savin to make an individual purchase.

The court observes that there is little doubt from this record but that the stockholders, with the exception of Farber, would have been delighted to have deferred to Seriani and Savin and wished them well. Any failure to call a special meeting was cured by the approval of the purchase by all stockholders, except Farber's proxy, at a special meeting held May 9, 1970.

The court further finds that there was a distinct benefit to the corporation by the purchase by Seriani and Savin of the 160 acres: at the time the corporate assets were sold, the 160 acres in question were available to aggregate the acreage and assets so that the entire package was considerably more attractive to purchasers.

The court finds that at the time of the sale in 1973 there was no appraisal made of the value of the 180 acres owned by the corporation and the 160 acres owned by Messrs. Seriani and Savin. Instead Seriani and Savin selected the round figure of $5 million to be the value of the corporation's parcel of approximately 180 acres, including the golf course and club. This left the balance of the aggregate purchase price of $8,353,700, or $3,353,700, to be the value of the 160 acres owned by Seriani and Savin.

This casual, almost unbelievable, manner of doing business is typical of the way this entire venture was operated since its inception. Perhaps only the fact that the golf course was located just southwest of Fort Lauderdale, which has been the fastest growing SMSA[2] in the nation for two decades, enabled the stockholders not only to avoid heavy losses but to enjoy handsome gains. For example, the stock which originally cost $100 per share has already paid out from the proceeds of the closing to the tune of $5665 per share. Farber, himself, owned 60 shares and has received over one-third of a million dollars, namely, more than $339,000 from the unfinished liquidation of Servan Land Co.

The court found that plaintiff was entitled to a limited accounting, and for that purpose an appraiser would be appointed by the court to determine the actual valuation of the parcel owned by the corporation and the value of the abutting parcel owned by Messrs. Seriani and Savin as of the time of the sale in 1973.

The court asked each party to submit the names of three real estate appraisers. Both plaintiff and defendants submitted the name of Lyle Anderson. Mr. Anderson would have been the first choice of the court had the selection been made without the benefit of recommendations of counsel.

Mr. Anderson reported the results of his appraisal in open court at a hearing. Because plaintiff was aggrieved with the appraisal the court permitted plaintiff to depose Mr. Anderson subsequently and subject the conclusions of his report to cross-examination.

The court finds that the valuation of the two parcels set forth in the appraisal report of Mr. Anderson accurately reflects a valuation of the two parcels as of March 15, 1973. He found the value of the golf course to be $4,065,915 and he found the value of the abutting land owned by Messrs. Seriani and Savin to be $3,950,925. This would come to a total value of both parcels of $8,016,840, a figure lower by more than $300,000 than the actual price paid by the purchasers of the parcels.

The court is impelled to find that Messrs. Seriani and Savin were exceedingly generous in their valuation of the golf course property at $5 million at the time the proceeds of the sale were allocated. Consequently, plaintiff cannot complain of the allocation of the proceeds because he has greatly benefited

---

2. Standard Metropolitan Statistical Area.

by the allocations made by defendants Seriani and Savin; in fact, plaintiff would have received approximately 20% less (a diminution of more than $65,000) for his stock valuation on the basis of the appraisal.

That leaves the court with the other thrust of plaintif's complaint: whether defendants Seriani and Savin have seized upon this opportunity to purchase the abutting land and have enriched themselves at the corporation's expense.

The Court has already found that Seriani and Savin should have informed the directors of the opportunity to purchase Mr. Farquhar's 160 adjoining acres. The court also has observed that the directors undoubtedly would have heartily approved the purchase of the adjoining parcel by Seriani and Savin because of the benefit to the corporate holders especially since they approved the purchase three months later. Unquestionably, the aggregating of the 160 acres of the adjoining land increased and enhanced the value of the corporate property.

A few months earlier the directors and stockholders had declined to pursue the matter of purchase of Mr. Farquhar's land and instead had devoted their funds to redeeming the notes held by the stockholders of the corporation.

Mr. Farber acknowledges that whatever Seriani and Savin wanted at the Directors' meetings, Seriani and Savin got. The court also notes that only Mr. Farber complains of the way this matter was handled. Not one of the several other minority stockholders has joined as a party-plaintiff.

## CONCLUSIONS OF LAW

Both as directors and majority stockholders of Servan Land Corporation, defendants Seriani and Savin stood in a fiduciary relationship to the corporation and to the minority stockholders as beneficiaries and by virtue of this position, defendants have the burden of proving fairness and good faith in their dealings with the corporation. See Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). As a fiduciary, an officer, director or dominant stockholder cannot use his power for his personal advantage to the detriment of the stockholders.

This court in no way takes lightly the principle that a director has an obligation to his corporation of "absolute and most scrupulous good faith." It would be easy to move from such a pious pronouncement to entering a decree in favor of plaintiff but sitting as a court of equity, this court cannot do so.

Plaintiff invokes the court's equitable powers by seeking restitution and an accounting to remedy the claimed breach of fiduciary duty occasioned by defendants appropriation of a corporate opportunity and wrongful allocation of purchase price. Plaintiff urges that Perlman v. Feldman, 219 F.2d 173 (2nd Cir. 1955) compels a decision in his favor so that the profit personally enjoyed by defendants Seriani and Savin on the sale of the 160 acres adjacent to the corporate property be considered a corporate asset and distributed among the stockholders.

In Perlman v. Feldman the majority stockholders, in selling their controlling interest in the corporation had also sold a corporate asset—the ability to control the product. The consideration received for the sale of corporate stock included the value of the stockholders controlling interest in the corporation which the court of appeals found to be a corporate asset. The court of appeals, in approving the intervention of equity, found that the sale of stock for excessive consideration directly harmed the corporate interests and constituted a breach of fiduciary duty.

Although this court has determined that defendants Seriani and Savin should have offered the 160 acres to the corporation before purchasing the property for themselves, the purchase of this property worked to the distinct advantage of the corporation and not to its

detriment because it enhanced the value of the major corporate asset—the golf course. In fact, unlike *Perlman* where the sale of the stock for excessive consideration harmed the corporation, Servan Land Company and its stockholders, Farber included, profited from the joint sale of the 160 acres and the golf course, not only because of the increased value of the golf course but because of the defendants' overvaluation of the corporate land to the detriment of the defendants' individual land.

This case is in marked contrast to other Florida cases where courts have seen fit to invoke equitable powers and impress a trust on individual property. In Newspaper Journal Corp. v. Gore, 147 Fla. 217, 2 So.2d 741 (1941) the corporate officer purchased land of the "utmost importance" to the corporation —the very land on which the property of the corporation was situated—and thereafter rented the property back to the corporation at an increased rental! Not only did the increased rental fee charged by the individual corporate officers to the corporation directly harm the corporation, but the acquisition of both tracts of land by the corporation, which could have financed the purchases, would have been valuable in carrying out the business of the corporation.

■ Where there is a duty on the part of officers to acquire property for the corporation and in violation of the obligation they purchase it individually, as in *Gore Newspapers*, Florida law is established that the individuals cannot retain the benefit of their self-serving actions. Similarly, in Pan American Trading & Trapping v. Crown Paint, 99 So.2d 705 (Fla.1957) although the land might not have been of the utmost importance to the corporation's welfare as in *Gore* the evidence established that the land was to be acquired as a site for expansion of corporate operations, a valid and significant corporate purpose of the corporation. The equitable powers of the court were properly invoked to impress a trust upon the property purchased by the individual officer in his own name instead of for the corporation.

Not only did the corporation actually profit from the personal actions of Seriani and Savin, but the 160 acres did not constitute a corporate opportunity nor was its acquisition adverse to the interests of the corporation. The mere fact that the land was adjacent to the corporate land in itself does not support a conclusion that therefore the acreage was a corporate opportunity. The property had no substantial relation to the corporation's primary purpose of operating a golf course and the individual purpose was not antagonistic to any significant corporate purpose and thus the facts do not fall within the general proposition that an officer of a corporation cannot acquire title to or an interest in property prejudicial to the corporation. See McGregor v. Provident Trust Co., 119 Fla. 718, 162 So. 323 (1935).

■ Plaintiff seeks for himself and, however involuntarily, for the other stockholders the results of Seriani and Savin's risk in purchasing the property The argument that a corporation does not have sufficient funds to undertake the venture will not normally absolve fiduciaries of accountability for profiting from a corporate opportunity. In Irving Trust Company v. Deutsch, 73 F.2d 121 (2nd Cir. 1934) the court held that directors could not take over a corporate contract for the purchase of patent rights essential to a corporate purpose for their own profit by a claim of corporate financial inability and thereby divert corporate gains from the transaction. However, not only might Servan Land Company have been financially unable to purchase the 160 acres, but less than a year before the purchase by Seriani and Savin, the directors and stockholders declined to pursue the possibility of purchasing this very same land. No one, not even Farber, made a motion to initiate any steps leading to the acquisition of that land.

The court concludes the 160 acres was not a corporate opportunity requiring that defendants must account for their profit on the risk they, but not the corporation eleven months earlier, were willing to take.

In addition, the court concludes that defendants Seriani and Savin have satisfactorily sustained the burden of explaining this transaction and establishing its propriety because of the benefit to the corporation by their holding the abutting property and being willing to aggregate it with the corporate property at the time of sale. It must be noted that the sale of the corporate property had been contemplated by the stockholders for some years.

On balance, plaintiff takes nothing by this suit and judgment will be entered for defendants with the cost of the appraisal to be borne by plaintiff.

Judgment is hereby entered for defendants.