319 So.2d 173 (1975)
STATE of Florida ex rel. Robert L. Shevin, Attorney General, et al., Appellants,
v.
INDICO CORPORATION, Appellee.
No. W-456.
District Court of Appeal of Florida, First District.
August 28, 1975.
Rehearing Denied October 20, 1975.
*174 Robert L. Shevin, Atty. Gen., Kenneth F. Hoffman and Thomas A. Harris, Asst. Attys. Gen., for appellants.
L. Charles Hilton, Jr., and Ralph Julian Bennett, Jr., Panama City, for appellee.
McCORD, Judge.
This is an interlocutory appeal from a final costs judgment entered subsequent to a final judgment on the merits of the case.
This was a suit brought by the State of Florida on the relation of the Attorney General filed against three developers along the Gulf coast of the State of Florida in Bay County seeking to abate an alleged public nuisance allegedly created by dune destruction and building so close to the water as to interfere with natural beach processes, including sand drift, thereby allegedly causing excessive erosion to the public and private beaches. Following a preliminary injunction hearing, at which the relief sought was denied, the state dropped two of the defendants as parties and with permission of the court, filed an amended complaint. Subsequently, the State of Florida Department of Administration, moved for intervention, such intervention being granted. Thereafter, a second amended complaint was filed by the two parties, the State of Florida on relation of the Attorney General and the State Department of Administration. The amended complaint alleged that the construction of Indico Corporation's Pinnacle Port Condominium project would create a public nuisance pursuant to § 60.05 and 823.05, Florida Statutes. In support of the allegation of public nuisance, the complaint alleged violation of county ordinances of Bay County (which made the Department of Legal Affairs the enforcing agent for the ordinances) and further alleged violations of coastal construction requirements under § 161.052, Florida Statutes, and violations of Development of Regional Impact requirements under Ch. 380, Florida Statutes, and regulations promulgated thereunder. The complaint in addition sought a ruling on certain matters under Ch. 380, Florida Statutes, as requested by the State of Florida, Department of Administration. Appellee's answer denied all allegations.
Subsequently, the State of Florida conceded that the development of the Pinnacle Port project had commenced prior to the enactment of the Bay County ordinances and that such ordinances therefore were not applicable to the project. The state also admitted that Indico Corporation's Pinnacle Port, when completed as planned, would not violate the 50-foot setback line imposed by § 161.052, Florida Statutes, and a summary judgment was entered for Indico on that issue and on the issue concerning the Bay County ordinances. The parties submitted the issues concerning Ch. *175 380, Florida Statutes, to the court on stipulated facts and Indico's motion for summary judgment which the court granted. The remaining unresolved issue which went to final hearing was whether or not the construction of Pinnacle Port, Phase I, would create a public nuisance as defined by the Laws of Florida. Following a four-day trial in which the court heard a number of expert witnesses, final judgment was entered for appellee, the court finding that the construction and development would not create a public nuisance. Costs were reserved for a further hearing and after such hearing, a final judgment taxing costs against the state for a total amount of $32,455.32 was entered. It is this cost judgment from which this interlocutory appeal is taken.
The Attorney General contends that costs should not have been assessed against him in this action brought under § 60.05, Florida Statutes, to abate an alleged public nuisance as defined by § 823.05, Florida Statutes. We agree. § 60.05 provides in pertinent part as follows:
"(1) When any nuisance as defined in § 823.05 exists, the attorney general or state attorney or any citizen of the county may sue in the name of the state on his relation to enjoin the nuisance, the person or persons maintaining it and the owner or agent of the building or ground on which the nuisance exists.
* * * * * *
(3) ... If the action is brought by a citizen and the court finds that there was no reasonable ground for the action, the costs shall be taxed against the citizen.
(4) On trial if the existence of a nuisance is shown, the court shall issue a permanent injunction and order the costs to be paid by the persons establishing or maintaining the nuisance ..."
The foregoing statute authorizes suit for the abatement of nuisances to be brought by the Attorney General, or State Attorney or any citizen of the county in the name of the state. It also specifies the parties against whom costs may be assessed  (1) a citizen bringing the suit if the court finds that there was no reasonable ground for the action, or (2) the person who establishes or maintains the nuisance if the existence of the nuisance is shown. Neither the Attorney General nor the State Attorney are mentioned as parties against whom costs may be assessed. The rule "expressio unius est exclusio alterius" (which means "express mention of one thing is the exclusion of the other") is an often applied and cardinal rule of statutory construction. Dobbs v. Sea Isle Hotel, Fla., 56 So.2d 341; Ideal Farms Drainage District v. Certain Lands, 154 Fla. 554, 19 So.2d 234; Bergh v. Stephens, Fla.App. (1st), 175 So.2d 787; Biddle v. State Beverage Department, Fla. App. (4th), 187 So.2d 65. The rule is applicable here. By express mention in the statute of those against whom costs may be assessed in an action for abatement of a nuisance, the legislature apparently intended to exclude from assessment of costs the two not mentioned  the Attorney General and the State Attorney. Evidently, the legislature wished to leave these two state officials free to attempt abatement of alleged public nuisances without the deterrent of having costs assessed against them if they are unsuccessful. The legislature did not even include them with the qualifying factor (reasonable grounds for the action) which it placed upon a citizen bringing such an action if the citizen were to escape assessment of costs against him.
Appellee contends that the opinion of the Supreme Court in Simpson v. Merrill, Fla., 234 So.2d 350 (which affirmed the opinion of this court) is controlling. There the Supreme Court held that under the general costs statute, § 57.041(1), Florida Statutes, costs may be taxed against the state and its agencies in favor of the party recovering judgment. The Supreme Court said:
"... Florida Statutes § 57.041 F.S.A. provides for the recovery of legal *176 costs by the party recovering the judgment in all cases except those specifically exempted. The exemptions in the statutes do not include the State or its agencies and we can find no basis for reading such an exemption into the plain language of the Act."
In the case sub judice, § 57.041 must be considered in pari materia with § 60.05. Upon doing so, we reach the inescapable conclusion that costs may not be taxed against the Attorney General or a State Attorney who brings an action to abate an alleged public nuisance.
Reversed.
BOYER, C.J., concurs, and RAWLS, J., dissents.
RAWLS, Judge (dissenting).
A brief review of the origin of this litigation is of paramount importance in considering the majority's opinion. The Attorney General, "... as parens patriae, trustee, guardian and representative, in behalf of the citizens and residents of the State of Florida, ..." [emphasis not supplied] filed an amended complaint for injunctive relief against appellee Indico Corporation to enjoin its development of three gulf-front condominium projects in the beaches area of Bay County, wherein he basically alleged:[1]
"... [T]he projects violated Section 161.052, Florida Statutes, which prohibits building within 50 feet of the line of mean high water; that the projects violated Bay County Ordinances 73-2 and 73-4 which require permit from the County for certain coastal construction; that the projects when completed as planned would accelerate natural erosion by interfering with coastal processes and thereby constitute a public nuisance; and that in the case of Pinnacle Port, the development would also violate Chapter 380, Florida Statutes, re developments of regional impact."[2]
The trial court in its final judgment (the merits of which have not been appealed by the Attorney General) found, inter alia:
"Plaintiff [appellant] subsequently conceded that development of the Pinnacle Port project had commenced prior to the enactment of Bay County Ordinances 73-2 and 73-4, and that such ordinances therefore were not applicable to such project. Plaintiff also admitted that defendant [appellee] Indico Corporation's Pinnacle Port when completed as planned would not violate the 50-foot setback line imposed by Section 161.052, Florida Statutes, and a Summary Judgment was entered for defendant Indico on that issue, and on the issue concerning Bay County Ordinances 73-2 and 73-4.
"The parties submitted the issues concerning Chapter 380, Florida Statutes, to the Court on stipulated facts and defendant Indico's Motion for Summary Judgment, which the Court later granted.
"The remaining unresolved issue as stated in the Pre-Trial Order was as follows:
"Whether or not the construction of defendant's project, Pinnacle Port, Phase I, will create a public nuisance as defined by the law of Florida.
......
"(1) The Florida Department of Natural Resources had investigated and made an administrative determination that the construction of the project in issue was *177 located considerably landward of the mean high water mark and would not violate the statutory 50-foot setback line.
"(2) That the construction of Pinnacle Port, Phase I, will not cause the beaches to erode nor will it accelerate any natural erosion of the beaches; that the actual weight of the credible evidence shows accretion rather than erosion.
"(3) The buildings of Pinnacle Port, Phase I, are well designed and are adequate for their intended use or purpose; the structural integrity of the said buildings in relation to the coastal processes was not questioned by the State or its witnesses. The buildings, with the exception of the westernmost building, have been laid out and the foundations constructed so that they are located an average of 35 feet landward of the natural vegetation line, with the nearest being 20 feet from the vegetation line, and the fartherest [sic] being 55 feet from the vegetation line. The westernmost building has been located slightly north and east of its planned location so that it is situated considerably more than 55 feet landward of the vegetation line. No part of any of the buildings is located closer than at least 90 feet from the mean high water line, as it was established at the commencement of construction, with the greater part of the construction located at least 120 feet landward of the mean high water line as it existed at the commencement of construction, all as shown on plaintiff's composite Exhibit No. 3. All of the evidence shows that the buildings of Pinnacle Port, Phase I, are located considerably more landward from the mean high water line than the great majority of all other commercial construction on the South side of U.S. Highway 98 in the Panama City Beach area.
......
"(4) The Court finds that the construction and development of defendant's project will not violate any constitutional, statutory, or regulatory provision, and will not create a situation which will result in obstruction to the use of soverign [sic] beaches and will not subject adjacent and nearby beaches and buildings to erosion and danger to human life and property as alleged in the complaint.
"(5) The Court finds that the construction and development of defendant's project known as Pinnacle Port, Phase I, will not create a public nuisance as alleged in the Complaint.
"(6) Preservation of our beautiful beaches is a commendable goal. The State of Florida has adequate and legal means of acquiring and preserving these beaches for the public use. This cannot be done at the expense of a private property owner without just compensation, because under the law, they enjoy the same constitutional safe guards as the owner of the most humble home in our State."
As the Attorney General so ably delineates in his brief, it is well known that in equity cases costs need not follow the result of the suit.[3] He then reasons that as the Chief Legal Officer of the State, who is acting under his duty to protect the public welfare,[4] it would be inequitable to tax the costs against him (the taxpayers). The fallacy of this argument is that in this modern era of state governmental interests in the environmental welfare, the Attorney General is not the sole protector of the public interest. As disclosed by the final *178 judgment rendered herein, the Florida Department of Natural Resources had investigated and made an administrative determination as to compliance with the myriad statutory regulations of the multiple governmental agencies charged with protecting the public interest. Of even greater import is that the action instituted by the Attorney General alleged not only public nuisance but also alleged violations of various county ordinances, state statutes, and general concepts of law such as trespass. Each of these various allegations were receded from by the Attorney General only after the appellee presented insurmountable proof that he could not prevail, resulting in the trial court entering several summary judgments in favor of appellee Indico Corporation and reserving jurisdiction to award costs pending final outcome of the proceedings.
When sitting as a member of the Supreme Court in Corneal v. State Plant Board, 101 So.2d 371 (Fla. 1958), Judge Wigginton, an outstanding Judge of this Court, foresaw a landowner's plight when confronted by the overpowering might of the sovereign when he stated in his dissenting opinion:
"When the general government acting through any of its many officers, boards, bureaus, commissions, departments or agencies, takes or threatens action calculated to deprive a person of his property unlawfully and without the payment of just compensation, that person should be permitted to seek protection of the courts without suffering an undue penalty as the price thereof.
"The cost of a successful proceeding instituted by one in the protection of his constitutional rights to restrain the unlawful exercise or abuse of governmental power should not fall on the threatened party, but on those whose action make the institution of the proceeding necessary."
His foresight was vindicated by the Supreme Court in Simpson v. Merrill,[5] wherein Justice Boyd, speaking for the Court, said:
"We are aware of decisions holding the State and its agencies immune from taxation of costs of litigation. We are also aware that governmental agencies today directly effect the lives and property of private citizens more than at any time in the past. This trend has given rise to increased litigation as individuals contest the demands of government. When, through litigation, these demands are determined to be unlawful, the government, like any other party, should be compelled to pay the costs of the litigation.
"To require successful litigants against the State and its agencies to pay their own costs offends our basic sense of fairness and may well be a violation of due process of law."
In fulfilling his general constitutional responsibility to represent the interests of all the people, the Attorney General has a concurrent duty to evaluate the efforts of other governmental agencies in performing their specific responsibilities as to given areas. In the environmental field, the legislature has, to a great extent, preempted the Attorney General's responsibilities by establishing and delegating the governmental powers in this field to a host of State agencies charged with the duty of protecting and safeguarding the natural resources of this State. The final judgment speaks for itself. Obviously, the Attorney General in this instance did not fully evaluate the findings of the other governmental agencies prior to launching the broad allegations stated in the instant complaint.
As to the question of equity in the assessment of costs, it is my view that the trial judge, who entertained the initial request for a preliminary injunction and who conducted the hearings upon the Attorney *179 General's multi-pronged attack against this landowner which resulted in a final judgment in favor of the landowner, necessarily concluded that the equities were wholly in the landowner's favor. I wholeheartedly agree.
Finally, the majority has seized upon an isolated provision in Florida Statute 60.05(3) and applied to it the doctrine of "expressio unius est exclusio alterius" to conclude that under no circumstances are costs to be assessed against the State when the State initiates an action pursuant to Florida Statute 60.05. Long prior to the enactment of the predecessor of Florida Statute 60.05(3), the Supreme Court of Florida in Lewis v. Yale[6] enunciated the doctrine to be followed in assessing costs in equity actions, and this doctrine has continued to be applied in the jurisprudence of this State subsequent to the enactment of Florida Statute 60.05. Just last year, this Court in Flagala Corporation v. Hamm,[7] in an opinion authored by Judge McCord, again reiterated this equitable principle wherein we quoted from the Supreme Court's opinion in Akins v. Bethea,[8] viz:
"`It has long been a fundamental rule of equity jurisprudence that in a chancery cause costs should be awarded as the justice of the case may require. Wilhelm v. Adams, 102 Fla. 669, 136 So. 397; News-Journal Corporation v. Gore, 147 Fla. 217, 2 So.2d 741. Accordingly, a court of equity, in the exercise of a sound judicial discretion, may decree that the costs shall follow the result of the suit; may apportion the costs between both parties; or may require that all costs shall be paid by the prevailing party. In either situation, an appellate court will not disturb the ruling of the chancellor, unless a clear abuse of discretion is made to appear.'" [Emphasis supplied]
The majority in the instant cause has completely ignored this time-honored principle of law which governs the award of costs in equity actions. Certainly the facts in this litigation show that the equities of this cause have at all times rested with appellee Indico Corporation, and that due to the Attorney General's complaint for injunctive relief, Indico Corporation had to expend large sums of money to protect and defend its rights.[9]
I would, in affirming the judgment of the trial court, dismiss this interlocutory appeal.
NOTES
[1] These are the allegations recited by the trial court in its final judgment.
[2] The trial court also recited in its final judgment that: "The issues of this cause were further complicated by a petition to intervene filed by the State of Florida Department of Administration in connection with the issues concerning Chapter 380, Florida Statutes, as to the development of regional impact."
[3] Schwartz v. Zaconick, 74 So.2d 108 (Fla. 1954), wherein the Supreme Court stated: "The general rule is that costs follow the results of the litigation but in equity this rule may be departed from according to the circumstances."
[4] Citing State ex rel. Landis v. S.H. Kress & Co., 115 Fla. 189, 155 So. 823 (1934).
[5] Simpson v. Merrill, 234 So.2d 350 (Fla. 1970).
[6] Lewis v. Yale, 4 Fla. 441 (1852).
[7] Flagala Corporation v. Hamm, 302 So.2d 195 (Fla.App.1st 1974).
[8] Akins v. Bethea, 160 Fla. 99, 33 So.2d 638 (1948).
[9] Where the course and conduct of the losing party have been the chief cause of great accumulations of cost, then in equity actions the losing party shall bear the burden of the cost. Lewis v. Yale, supra.