WELLS, Judge.
Gwendolyn Fernandez and Sheldon and Lucille Barnes appeal from a final judgment dissolving Professional Institute of Hialeah (“PIH”) a partnership in which they together hold a 50% interest with Basil Yates, M.D. and Kathleen Yates and the Travis Family who together hold the remaining 50% interest. Yates and Travis cross-appeal from that judgment claiming error in the trial court’s refusal to also dissolve Dabama, Inc., a corporation owned by the same parties with the same interests.[1] We find no error in the trial *143 court’s decision to dissolve the partnership but for the following reasons reverse its decision not to also dissolve the underlying corporation.
At the root of this dispute is a six story Hialeah medical office building located diagonally across the street from Hialeah Hospital, built by four doctors — doctors Fernandez, Barnes, Yates, and Travis — in 1969 from which they conducted their medical practices. The building itself is owned by Dabama, Inc., a corporation in which doctors Fernandez and Yates each held a 1/3 interest and doctors Barnes and Travis each held a 1/6 interest, and leased for a term of 99 years to and managed by PIH, a partnership in which these same doctors held identical ownership interests.[2] No shareholder or partnership agreements exist for either Dabama or PIH.
At present only Dr. Yates, an 85-year-old neurosurgeon, continues to practice medicine from the building and occupies the same space that his practice has occupied since the building was opened. Dr. Barnes, also in his 80s has retired from the practice of medicine and no longer occupies space in the building. Gwendolyn Fernandez (also in her 80s), Dr. Fernandez’ former wife similarly occupies no space in the building. Dr. Travis is deceased.
From 1969 until 1996, when Dr. Fernandez transferred his interests in Dabama and PIH to his ex-wife, Dr. Fernandez managed the building. Since that time, Dr. Fernandez and Gwendolyn Fernandez’ son, Richard, an attorney and real estate broker, has managed the building pursuant to a written Management Agency Agreement (“MAA”) with both Dabama and PIH. That agreement, which was signed by all of the shareholder/partners or their successors in interest, was for three year terms, the first commencing October 1, 1996 and ending on September 30, 1999, each automatically renewed unless can-celled by either Richard or Dabama/PIH:
ARTICLE II
A. Term of Agreement. The term of this agreement shall commence October 1, 1996, and shall continue for a period of three years until September 30, 1999, and is automatically renewed thereafter for successive periods of three years. This agreement may be cancelled after one year, upon six months written notice by either party....
The Yates/Travis group wants to terminate the management agreement arguing Richard’s mismanagement has allowed the building, now over 40 years old, to fall into such a state of disrepair as to' make it an undesirable location for any medical practice, including Dr. Yates’ own. Specifically, Dr. Yates, a neurosurgeon, the only original shareholder/partner still practicing medicine in the building, cites to the fact that the building elevator frequently malfunctions making it impossible for any patient who must rely on a walker and wheelchair, including his post-surgical brain and spine patients, to get around or *144 access the building’s upper floors most particularly his sixth floor office suite. He also complains that inadequate seating is provided on the building’s first floor for patients awaiting post-visit transportation and that after the building’s doors are locked around six o’clock in the afternoon, no place at all is provided outside the building for patients to wait for transport. Dr. Yates further points to the fact that patients and other visitors to the building have no access to the building’s ADA compliant first floor bathroom which is kept locked to prevent unauthorized use by those waiting for buses at a nearby bus stop and not even he has access to a key for this bathroom so that his disabled, post-surgical patients may use it.
Dr. Yates also notes that the building’s occupants have no ability to control the climate in their suites resulting in frigid conditions for staff and patients alike because air temperature is determined by Richard, who controls the air conditioning from a remote computer system; and although the building has its own parking lot, it is kept chained to prevent unauthorized parking, making access even more inconvenient for the building’s patrons. These circumstances notwithstanding, and the fact that the building is now only 40% occupied, the Fernandez/Barnés group has refused to meet with the Yates/Travis group since 2007 to discuss any issues having to do with management of the only asset owned by Dabama and managed by PIH. No corporate or partnership annual meetings have taken place during this period of time.
In May of 2012, the instant action was filed by the Yates/Travis group, seeking, as pertinent here, to dissolve Dabama; to appoint a receiver; to partition the real property owned by it; and to declare the parties’ rights regarding the 99 year lease between PIH and Dabama, the management agreement with Richard, and dissolution of PIH.[3] Although the Fernandez/Barnes group hopelessly stymied any action by the partnership or the corporation by virtue of their refusal to so much as meet with the Yates/Travis group much less agree to anything, they nonetheless, with less than the majority vote needed to take any action on behalf of either entity, as the trial court observed, either allowed Richard to use partnership/corporate funds to the tune of over $70,000 to fund his defense to the Yates/Travis group’s lawsuit, or acquiesced in that use.[4]
Ultimately, following discovery and substantial motion practice, the trial court considered motions for summary judgment filed by both sides. In its order granting dissolution of the partnership but denying dissolution of Dabama, the court acknowledged the miserable (and in reality the intolerable) state of the parties’ relationship:
The crux of the issue is that the parties are entrenched with a 50-50 split to a point that they there have been no meetings to discuss the business partnership for more than four years.
Section 620.8801(5)(b) authorizes the Court to dissolve a partnership if “An-
*145 other partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with such partner.” Here, the Defendants argue that they have taken as benign a role as one can imagine. However, the Court finds that the defendants’ have entered into a joint defense agreement with Richard Fernandez and either allowed Richard Fernandez to take over $70,000 out of the partnership to pay his attorney fees, or without approval or consultation with the plaintiffs’ [sic] acquiesced in the withdrawal of partnership assets for the payment of attorney fees.
Further it appears the property manager has not remained a neutral entity in this matter as between the Plaintiffs’ [sic] [Yates/Travis] and the Defendants’ [sic] [Fernandez/Barnes.] It appears that Mr. Fernandez has not prepared and provided financials to the parties as required under the Management Agency Agreement Article IV. The refusal of the Defendants’ [sic] to meet with the Plaintiffs’ [sic] and conduct discussions of the business of the partnership for these many years have rendered PIH rudderless except for the decisions made by Mr. Fernandez.
Under the circumstances found in this case the Court finds that the partners have engaged in conduct which has made it not practicable to undertake business under the partnership. Therefore the Court dissolves the PIH partnership agreement.
On this record, we find no error in the trial court’s decision to dissolve PIH. The Yates/Travis group sufficiently alleged and established entitlement to such relief under section 620.8801 of the Florida Statutes.[5] However, we conclude the trial court erred in failing to dissolve Dabama. Section 607.1480, of the Florida Statutes (2012), addressing the grounds for judicial dissolution of a corporation provides in relevant part:
A circuit court may dissolve a corporation or order such other remedy as provided in s. 607.1434:
[[Image here]]
(2) In a proceeding by a shareholder if it is established that:
(a) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered.
§ 607.1430, Fla. Stat. (2012).
In Freedman v. Fox, 67 So.2d 692, 693 (Fla.1953) (citing News-Journal Corporation v. Gore, 147 Fla. 217, 2 So.2d 741 (1941)), the Court observed “the drastic action of dissolving a corporation will not be justified unless its affairs have reached the sorry state where the purposes for which it was organized are no longer possible of attainment.” While the parties debate the applicability of Freedman, we believe the high standard set for dissolution *146 of a corporation as observed in that case is, in fact, met in this case. The facts sub judice reveal just such a failure to function and frustration of purpose.
In this case, four physicians purchased a parcel of property and constructed a building primarily for the purpose of securing space from which they and others could conduct medical practices. To insulate themselves from liability and for ease of operating and managing the property, they also formed a partnership to which the corporation leased the property. These purposes were fulfilled for many years until one of the four physicians died, one retired from the practice of medicine, and one gave away his interest in a divorce, leaving only one with any need to occupy the building.
While arguably the purpose for owning the building and leasing it as a medical arts building might still be fulfilled, the age and physical condition of the building and its 60% vacancy rate make that purpose increasingly less possible. This is especially so when the shareholder/partners are hopelessly deadlocked on every issue. With half of the shareholder/partners refusing to even meet with the remaining shareholder/partners to consider how to address the needs of the property so that its purpose may continue to be realized and with the entrenched manager/son of one of the recalcitrant shareholder/partners taking direction from less than a majority of the shareholder/partners, it is impossible to see how “irreparable injury” to Dabama has not been suffered, much less been threatened. Thus, while Dabama was solvent at the time this action was brought, the fact that its purpose was wholly frustrated is beyond doubt. As confirmed by the testimony of the Fernandez/Barnes group’s expert Jeremy Larkin, the building owned by Dabama is in decline and without agreement of the parties, the capital infusion needed to improve its occupancy rate could not occur, guaranteeing its continued decline. This record, we believe was sufficient to support dissolution of Dabama. See Behrens Co., Inc. v. Rawls, 518 So.2d 945, 945-46 (Fla. 3d DCA 1987) (“The trial court did not- err in granting the appellee’s motion for dissolution pursuant to section 607.274(l)(a)(2), Florida Statutes (1985) [precursor to section 607.1430], because the evidence clearly indicates that the shareholders are hopelessly deadlocked at present and have been so for a number of years.”); see generally 16A William Meade FletcheR et al„ Fletcher Cyclopedia of the Law of Corporations § 8066.10 (updated 2014) (“Most jurisdictions now permit judicial dissolution when either the shareholders are deadlocked in voting power or the directors are deadlocked in the management of the corporate affairs.”). In sum, the trial court’s own findings recognize that Dabama’s shareholders are unable to break a corporate deadlock. The defendants’ own expert confirmed that absent such a break, operation of the property owned by Dabama would continue to decline. This irreparably frustrates the very purpose of this corporation and injures it thereby satisfying the statutory requirements necessary to support dissolution of this entity.
Accordingly, we affirm that part of the trial court’s order granting the dissolution of PIH but reverse that part of the trial court’s order denying the dissolution of Dabama, Inc.

. Gwendolyn Fernandez, the ex-wife of Dr. Manuel Fernandez, owns a 1/3 interest in *143 both PIH and Dabama, Inc. Dr. Sheldon Barnes and his wife Lucille own a 1/6 interest in both entities. Dr. Basil Yates and his wife Kathleen own a 1/3 interest in both entities. The Travis Family Partnership, Deborah Travis, Susanne Travis, Rochelle Travis, and Bradley Travis, who succeeded to the interest of Dr. Burton Travis, own the remaining 1/6 interest in both entities. For the sake of clarity we will refer to these individuals and entities as either the Fernandez/Barnes group, who are aligned in their interests and positions, or as the Yates/Travis group, who similarly are aligned in their interests and positions.

. By agreement, PIH pays only nominal rent to Dabama to avoid double taxation.

. A number of additional claims were alleged solely against Richard which were severed and are not at issue here.

. The management agreement between Daba-ma/PHI and Richard Fernandez contains an indemnification provision which provides that the owner, which is the corporation and partnership agree to reimburse the manager "upon demand " for any moneys which manager is required to pay in defense of any claim. Fernandez and Barnes are not the owners of either Dabama or PHI, they are only 50% shareholder/partners without authority to act alone on behalf of either entity. They could not, therefore, have agreed to any manager demand.

. This provision sets out the "[e]vents causing dissolution and winding up of partnership business,” and provides in pertinent part:
A partnership is dissolved, and its business must be wound up, only upon the occurrence of any of the following events: (5) On application by a partner, a judicial determination that:
(a) The economic purpose of the partnership is likely to be unreasonably frustrated;
(b) Another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with such partner[.]
§ 620.8801, Fla. Stat. (2012).