**1354**

HOME GUARANTY INSURANCE COR-
PORATION, a Virginia corporation,
Plaintiff-Appellant,

v.

NUMERICA FINANCIAL SERVICES,
INC., a Florida corporation, Berkeley
Federal Savings and Loan Association,
Defendants-Appellees,

Federal National Mortgage Association,
et al., Defendants.

No. 87–3144.

United States Court of Appeals,
Eleventh Circuit.

Jan. 19, 1988.

Waren E. Zirkle, McGuire, Woods, Battle
& Boothe, Richmond, Va., Raymond F.
Scannell, Robert T. Billingsley, Tampa,
Fla., for plaintiff-appellant.

Cristina L. Mendoza, Murai, Wald, Bion-
do, Matthews & Moreno, Miami, Fla., for
Mortgage Ins. Companies of America.

Arthur J. England, Jr., Fine, Jacobson,
Schwartz, Nash, Block & England, Miami,
Fla., William C. Frye, Trenam, Simmons,
Kemker, Scharf, Barkin, Frye & O'Neill,
P.A., Tampa, Fla., David M. Snyder, Mort-
gage Bankers Assoc. of Fla & Alliance
Mortgage; John F. Corrigan, Ulmer, Mur-
chison, Ashby Taylor & Corrigan, Jackson-
ville, Fla., Harold D. Murry, Jr., Washing-
ton, D.C., for defendants-appellees.

Before FAY and HATCHETT, Circuit
Judges, and MORGAN, Senior Circuit
Judge.

FAY, Circuit Judge:

This is an interlocutory appeal from a
case being considered by the federal dis-
trict court for the Middle District of Flor-
ida. Home Guaranty Insurance Company
("HGIC") sought a declaration that certain
certificates of insurance it issued to Num-
erica Financial Services, Inc. ("Numerica")
are void due to material misrepresentations
in the applications for insurance. The dis-
trict court found that the statute under
which HGIC proceeded does not apply to
mortgage guaranty insurance. Although
this ruling does not constitute a ruling on
the merits of the case, it effectively de-
stroys HGIC's action. Thus, HGIC filed
this interlocutory appeal to resolve the
question of the applicability of the Florida
statute to mortgage guaranty insurance.
We agree with the district court that the
statute does not apply to mortgage guaran-
ty insurance, and, accordingly, affirm the
district court's ruling.

### BACKGROUND

Mortgage guaranty insurance is "a form
of casualty or surety insurance" that pro-
tects lenders against losses they may incur
due to borrower defaults on mortgage
loans. Fla.Stat. § 635.011 (1985). The bor-
rower pays a premium to the mortgage

insurance company for the benefit of the lender. Although the borrower pays this premium, the principal parties affected by the mortgage guaranty insurance policy are the lender and the insurance company.

HGIC is a mortgage guaranty insurer that insures residential mortgage loans. Numerica's business is loaning money to businesses and to individuals; many of these loans are secured by mortgages. In 1982 the two companies decided to do business together. Pursuant to their agreement, HGIC had to approve or disapprove the insurance applications submitted by Numerica on an individual basis. HGIC made its decisions based on information submitted to it by Numerica.[1] If HGIC approved an application, the terms of the master policy issued by HGIC in 1982 governed.

HGIC and Numerica entered into several insurance contracts pursuant to the 1982 agreement. One such policy involved a loan made by Numerica to Douglas and Andrena Anderson. The Andersons borrowed the money to purchase property in Vernal, Utah. The documents Numerica submitted to HGIC contained the following misrepresentations: (1) that the construction of the property had been completed; and (2) that the Andersons had made a $17,000 cash down payment. In reality, the construction had not been finished, and no down payment had been made.[2]

Numerica made a second loan to John and Mary Harpel for the purchase of residential property in Tampa, Florida. In connection with this loan, Numerica submitted several documents to HGIC. These documents showed that the Harpels had made a $20,200 down payment on the property, but failed to add that a second mortgage financed this down payment.

HGIC, relying on the documents presented by Numerica, issued certificates of insurance for these loans. When, in 1985, HGIC learned about these misrepresentations and misrepresentations existing in the applications for other certificates of insurance, it attempted to rescind its contracts with Numerica. HGIC sent a notice of rescission to Numerica and tendered a refund of all the premiums. Numerica refused to accept the refund or to recognize the rescission. HGIC then brought this diversity action in federal district court, seeking a declaration that the certificates were void due to the misrepresentations.[3]

### THE ISSUE

HGIC proceeded under Fla.Stat. § 627.409(1) (1985) ("Section 627.409"), which states:

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(a) They are fraudulent;

(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or;

---

1. *See infra* text at 1358–59.

2. Numerica concedes that there were misrepresentations, but claims that it had made them without knowing that the statements were false. Earlier in the litigation, the parties battled over whether the policyholder needed to be aware of the misrepresentation at the time it was made in order to trigger Fla.Stat. § 627.409(1) (1985) ("Section 627.409"). While the parties were still debating, the Florida Supreme Court issued an opinion that resolved the issue. The court declared that even an innocent misrepresentation is sufficient to trigger Section 627.409. *Continental Assurance Co. v. Carroll,* 485 So.2d 406 (1986).

3. Initially, HGIC raised several counts in addition to the two discussed in this opinion. HGIC named Numerica, Berkeley Federal Savings and Loan Association ("Berkeley"), Federal National Mortgage Association, Numerica Savings Bank, and Mid–America Federal Savings and Loan Association ("Mid–America") as defendants. Subsequently, the parties agreed to dismiss Mid–America as a defendant and to withdraw their claims and counterclaims regarding all counts besides those mentioned in this opinion. As a result, only HGIC, Numerica, and Berkeley are still parties to this action.

(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

This provision allows an insurance company to avoid its obligations under a policy whenever the holder of the policy makes material misrepresentations in acquiring the policy. HGIC, in bringing the action, argued that Numerica made such material misrepresentations.[4] HGIC obviously assumed that Section 627.409 applied to this case.[5]

Numerica argues that Section 627.409 does not apply to mortgage guaranty insurance. Their argument is very straight-forward. Section 627.409 is part of the Florida Insurance Code. The general provisions of the Florida Insurance Code, however, do not govern mortgage guaranty insurance. Mortgage guaranty insurance is instead regulated by Chapter 635 of the Florida statutes. Fla.Stat. § 635.091 (1985) ("Section 635.091") provides that certain other parts of the Insurance Code apply to Chapter 635.[6] In addition, Chapter 635 expressly incorporates some portions of the Insurance Code. *See, e.g.,* Fla.Stat. § 635.051 (1985) (licensing provisions incorporated). Those parts of the Insurance Code not expressly incorporated, Numerica contends, do not apply to mortgage guaran-

ty insurance. Since Chapter 635 makes no mention of Section 627.409, the section cannot be relied on by a mortgage guaranty insurance company such as HGIC.

We agree with Numerica and with the district court. By drafting a separate chapter of the Florida Insurance Code to govern mortgage guaranty insurance, the Florida legislature made a conscious choice not to have the general provisions of the Code apply to mortgage guaranty insurance. To the extent that the legislature wished to incorporate provisions of the Code into Chapter 635, it expressly did so by statute. Because Section 627.409 is not among the provisions incorporated, it is not applicable to mortgage guaranty insurance.

## HGIC'S ARGUMENTS

### 1. *The Plain Meaning of Section 635.091*

HGIC agrees with Numerica that the plain meaning of Section 635.091 should govern this dispute. HGIC, however, disagrees on what the plain meaning of the statute is. The statute purports to set forth those parts of the Insurance Code applicable to mortgage guaranty *insurers.* Fla.Stat. § 635.091 (1985). This, HGIC argues, is very different from stating that those sections govern mortgage guaranty *insurance.* We agree with HGIC that Section 635.091 attempts to regulate mortgage guaranty insurers. However, the meaning of "insurers" under the statute is broad. Section 627.409, if applicable, would have been named in Section 635.091.

Section 635.091 selectively incorporates various portions of the Insurance Code.

---

4. For the purposes of this interlocutory appeal alone, the materiality of the misrepresentations is not at issue.

5. This assumption was not completely unfounded. Prior to the enactment of Section 635.091, one district court judge had applied Section 627.409 to mortgage guaranty insurance. *See Continental Mortgage Insurance, Inc. v. Empire Home Loans, Inc.,* No. 75–1099–Civ–JLK (S.D. Fla. Nov. 26, 1975). The court in *United Guarantee Residential Insurance Corp. of North Carolina v. American Pioneer Savings Bank,* 655 F.Supp. 165 (S.D.Fla.1987), also applied the statute to a mortgage guarantee insurance contract

that existed before Section 635.091's enactment. The court in that case, however, implied that Section 635.091 would "repeal" Section 627.409 in this area of the law in the future. *See id.* at 168 n. 7. The issue of the applicability of Section 627.409 has not been directly addressed since the enactment of Section 635.091.

6. Section 635.091 reads: "The following provisions of the Florida Insurance Code apply to mortgage guaranty insurers: Chapter 624; Chapter 625; parts I, II, VIII, and X of Chapter 626; § 627.915; Chapter 628; and Chapter 631." Fla.Stat. § 635.091 (1985).

*See* Fla.Stat. ch. 624 (1985 & Supp.1986) (defining terms of art, giving department of insurance authority to regulate and keep records of insurance companies, discussing procedures for authorizing insurers, and describing fees and other charges insurers must pay); Fla.Stat. ch. 625 (1985) (regulating the manner in which insurers may value and manage their assets and liabilities); Fla.Stat. ch. 626, parts I, II, VIII, IX (1985 & Supp.1986) (governing licensing and conduct of insurers); Fla.Stat. § 627.915 (Supp.1986) (setting forth insurer reporting requirements); Fla.Stat. ch. 628 (1985 & Supp.1986) (establishing organization and corporate procedures insurers must follow); Fla.Stat. ch. 631 (1985 & Supp.1986) (discussing insurer insolvency). Taken as a whole, these parts establish a means of regulating mortgage guaranty insurers. Because of the scope of the statute, we must read "mortgage guaranty insurers" broadly. The statute has basically the same purpose it would have had if the legislature had used the term "insurance" instead of "insurers." Section 627.409, which sets forth those circumstances in which insurance companies can avoid their contractual obligations, clearly falls within the purview of the statute and would have been listed if the legislature had wanted to confer this right on mortgage guaranty insurers.

### 2. *Implied Repeal*

Next, HGIC asserts that in Florida there is a presumption against implied repeal of a statute, and that the district court ignored that presumption. We disagree. First, it is unclear that Section 627.409 ever applied to mortgage guaranty insurance. Prior to the enactment of Section 635.091, only one court had relied on Section 627.409 to hold that a mortgage guaranty insurance contract was void. *See Continental Mortgage Insurance, Inc. v. Empire Home Loans, Inc.*, No. 75–1099–Civ–JLK (S.D.Fla. Nov. 16, 1975). Although Section 627.409's applicability was not a contested issue, the case plainly suggested that Section 627.409 did apply to mortgage guaranty insurance. It is possible that the legislature has expressly incorporated various parts of the

Insurance Code partly in order to clarify that many other parts of the Insurance Code, including Section 627.409, do not govern mortgage guaranty insurance law. If the legislature never intended for Section 627.409 to apply to mortgage guaranty insurance, then Section 635.091 did not constitute a repeal of Section 627.409 as it applied to mortgage guaranty insurance.

Second, even if the legislature had originally intended Section 627.409 to apply to mortgage guaranty insurance, Section 635.091 changes this. Although, as HGIC correctly notes, implied repeal is disfavored in Florida, *see e.g., State v. Dunmann*, 427 So.2d 166, 168 (Fla.1983), it is permissible. The courts have recognized the implied repeal of legislation when either: (1) there is evidence that the legislature intended to repeal the earlier statute, or (2) the old statute cannot be reconciled with the new one. *Estate of Flanigan v. Commissioner*, 743 F.2d 1526, 1532 (11th Cir.1984); *Dunmann*, 427 So.2d at 168. Throughout Chapter 635, there are provisions that list the statutes applicable to Chapter 635; by this system, the chapter implicitly excludes those statutes not mentioned. *See State ex rel. Shevin v. Indico Corp.*, 319 So.2d 173, 175 (Fla. DCA 1975), *cert. dismissed*, 339 So.2d 1169 (Fla.1976). Any reading of Section 627.409 that applies it to mortgage guaranty insurance is clearly inconsistent with the more recently enacted Section 635.091. To the extent that Section 627.409 may have applied to mortgage guaranty insurance, then, we find that it has been repealed by Section 635.091.

### 3. *Policy*

Finally, HGIC declares that a ruling that Section 627.409 does not apply to mortgage guaranty insurance conflicts with established policy. It points to Fla.Stat. § 635.011(1) (1985), which defines mortgage guaranty insurance as "a form of casualty or surety insurance," and suggests that this exhibits a legislative intent to treat mortgage guaranty insurance the same as it treats casualty and surety insurance. We disagree. Casualty and surety insurance are completely regulated in the

general provisions of the Florida Insurance Code. If the legislature wanted mortgage guaranty insurance to be treated exactly the same as these other types of insurance, it could easily have achieved its goal by defining casualty and surety insurance to include mortgage guaranty insurance. Then, those provisions of the Florida Insurance Code regulating casualty and surety insurance would automatically, unambiguously regulate mortgage guaranty insurance. Instead, the legislature created a separate chapter to provide for mortgage guaranty insurance. To the extent that mortgage guaranty insurance *is* like casualty or surety insurance and should be treated as such, sections of Chapter 635 expressly mention this fact. Many provisions of the Insurance Code do apply to Chapter 635, and regulate the business fairly thoroughly. In addition to those provisions incorporated under Section 635.091, Fla.Stat. § 635.051 (1985) incorporates most of the general licensing laws into the chapter; Fla.Stat. § 635.071 (1985) dictates that the insurance department must approve policy forms and related forms, and that insurers must file information regarding their rates and premiums with the department; and, Fla.Stat. § 635.081 (1985) gives the insurance department the power to adopt any rules necessary to enable it to administer and enforce the chapter. These rules supplement Chapter 635 itself, which defines and regulates mortgage guaranty insurance companies.

Chapter 635 and the supplemental provisions still fail to provide the extent of regulation and protection provided by the Florida Insurance Code. We believe that this stems from the legislature's determination that mortgage guaranty insurance is distinguishable from other types of insurance. The average holders of most types of insurance policies are individuals; much of the statutory regulation has emerged to protect consumers in their dealings with large insurance companies. Chapter 627, which contains Section 627.409, expressly recognizes this, stating that the chapter's purpose is to "promote the public welfare" and "protect policyholders and the public." Fla.Stat. § 627.031 (1985). Section 627.409 in particular clearly exists for this purpose. Prior to its enactment, insurers could much more easily avoid their obligations to innocent policyholders.[7] Section 627.409 protects consumers by making it harder for unscrupulous insurers to declare insurance contracts void based on technicalities. *See* Case Note, *Aviation Law—Florida's "Antitechnical" Statute: Should Insurance Exclusions Be Included?*, 10 Fla.St.U.L. Rev. 737, 739–40 (1983). The legislature apparently thought that Section 627.409 and other parts of the Insurance Code were not necessary in the context of commercial insurance policies that are invariably sold to companies engaged in mortgage lending.

In addition, mortgage guaranty insurance companies *also* do not require the protection provided by Section 627.409. Section 627.409 lets insurance companies void policies when material misrepresentations have been made. This protects insurers who reasonably relied on misrepresentations made in application for insurance.

This provision need not extend to Chapter 635 because mortgage guaranty insurance applications are different from applications for other types of insurance. In their brief, amicus curiae Mortgage Bankers Associations of Florida and Alliance Mortgage Company explain:

> For most types of insurance coverage, the application for insurance is a discrete document which contains all of the information which the insurance company be-

---

7. Under the common law, a warranty was any term made a part of the policy itself. A representation was a collateral statement made by the policyholder which the insurer considered in deciding whether to insure the party and what rate to charge. While only material misrepresentations were grounds for avoiding a policy, "noncompliance with a provision construed as a 'warranty' was a complete defense for the insurer regardless of materiality of the 'breach.'" Keeton, *Insurance Law Rights at Variance with Policy Provisions: Part Two*, 83 Harv.L.Rev. 1281, 1281 (1970). The statutory law of most states has changed the harsh effects of the common law rule by declaring that all statements made by the policyholder shall be treated as representations. *See* Keeton, *supra;* Comment, *Misrepresentations and Nondisclosures in the Insurance Application*, 13 Ga.L.Rev. 876 (1979).

lieves is relevant to the assessment of the risk.... In this context, the party making the application is clearly in the best position to know whether the statements made in the application are correct and the extent to which these statements provide a complete picture of all relevant facts.

In contrast, mortgage insurance has no comprehensive "application form." Mortgage companies generally submit an "application for insurance", a form with certain basic information such as the name of the borrower, location of the property and the amount of the loan. Submitted with that form is a package of material consisting of virtually all the documents needed to obtain a mortgage loan, including:

a) an appraisal of the property performed by an independent appraiser;

b) a sales contract executed by the seller and the purchaser;

c) an application for the mortgage prepared by the borrower;

d) verification of employment prepared by the borrower's employer;

e) verification of deposit prepared by the borrower's banking institutions;

f) a credit report on the borrower, generally prepared by a credit bureau; and

g) tax records prepared by the borrower.

... Mortgage insurance companies ... have the ability to review the documentation that the mortgage company is relying on and verify that information or seek additional information.

Brief of Amicus Curiae Mortgage Bankers Association of Florida and Alliance Mortgage Company at 7–9 (citations omitted). Because of their unique ability to evaluate the documentation, mortgage guaranty insurance companies are on a more equal footing with mortgage lenders and need not rely on Section 627.409 for protection.

Thus, we find that the legislature's policy is to exclude Section 627.409 from Chapter 635.[8]

## CONCLUSION

For all of the reasons stated in this opinion, we conclude that Section 627.409 of the Florida statutes does not apply to mortgage guaranty insurance.

**AFFIRMED.**

---

**8.** Our discussion of the legislature's policy is in response to HGIC's argument, rather than an evaluation of the legislature. It is really up to the legislature to decide what policy is most effective and fair.